EASTERN FIREPROOFING CO., Inc.,
Plaintiff,

v.

UNITED STATES GYPSUM COMPANY,
Defendant.

Civ. A. No. 57-938-G.

United States District Court,
D. Massachusetts.

March 31, 1970.

Roger Coulter and Barry McDonough, Parker, Coulter, Daley & White, W. Bradley Ryan, Guterman, Horvitz & Rubin, John M. Kahn, Hill & Barlow, Boston, Mass., for plaintiff.

Rhodes Lockwood, Choate, Hall & Stewart, Bost. Mass., for defendant.

## MEMORANDUM ON OBJECTIONS TO MASTER'S REPORT

GARRITY, District Judge.

This private antitrust action was originally commenced on September 24, 1957. Eastern Fireproofing Co., Inc., hereinafter referred to as the plaintiff, was engaged in the roof deck business for which it purchased gypsum fill and formboard materials. It filed complaints against both United States Gypsum Company, hereinafter referred to as defendant, and National Gypsum Company, both major suppliers of roof deck material, alleging that each had refused to sell gypsum fill and formboard to the plaintiff pursuant to conspiracies, in restraint of trade and in attempt to monopolize, with plaintiff's competitors, J. B. Eurell Company and Keystone Fireproofing Corporation and with John B. Eurell, the principal stockholder of both companies. After a decade of pleadings and discovery and pretrial conferences and orders, the court, on April 24, 1967, ordered a severance of the issues of liability and damages, with all matters relating to the former subsequently submitted to a jury at a trial which lasted nine weeks.

Special interrogatories were submitted to the jury at the liability trial which eliminated National Gypsum Company as a participant in any antitrust violation and as a defendant in this case. With respect to United States Gypsum, the jury found that it had conspired with Eurell and the Eurell companies to refuse to sell to the plaintiff gypsum fill and formboard, both in restraint of trade, in violation of 15 U.S.C. § 1, and in an attempt to monopolize the business of poured-in-place gypsum roof decks, in violation of 15 U.S.C. § 2. The jury also answered that the conspiracy extended between January 7, 1954 and September of 1957 and that as a result of these antitrust violations the plaintiff was injured in its business and property. Accordingly, on June 28, 1967 an interlocutory judgment of liability was entered against the defendant.

The defendant then moved that the issue of damages remaining to be litigated be referred to a master pursuant to Rule 53(b), Fed.R.Civ.P. Since this issue was complicated, the court on September 28, 1967 allowed the motion and ordered that all issues of damages sustained by the plaintiff in its business or property by reason of the defendant's refusing to sell gypsum fill and formboard to the plaintiff during the time of the conspiracy be referred to a master.

The hearings before the special master were extensive. Testimony was received on 32 days and comprises 3287 pages of transcript. In addition, numerous excerpts from testimony at the liability trial plus depositions, interrogatories, and exhibits offered by both parties were received in evidence. Oral argument was heard and more than 400 pages of written argument, requests and suggestions were presented by the parties. On March 31, 1969 the master filed with the court his findings of fact on the issues of damages submitted to him. The master's report comprises 60 pages of text and an additional 23 pages of appendices.

The case is now before the court on objections to the master's report filed by both parties. The court has been pro-

vided with a record of the evidence before the master, has heard oral arguments and has received comprehensive memoranda and counter-memoranda.[1]

### Scope of Court's Review

The parties have repeatedly declined to waive their right to jury trial on issues of damages and the court assumes that the ultimate trier of fact will be a jury and not the court. Accordingly, Rule 53(e) (3), Fed.R.Civ.P., shall be the starting point. It provides that in actions to be tried by a jury "the master shall not be directed to report the evidence. His findings upon the issues submitted to him are *admissible as evidence of the matters found* and may be read to the jury, subject to the ruling of the court upon any *objections in point of law* which may be made to the report." (Emphasis added.)

■■ The court is unaware of any significant federal precedent defining its scope of review in ruling on "objections in point of law." Cases construing Rule 53(e) (2) where questions are referred to a master in nonjury actions are not applicable. In those cases the court will accept the master's findings of fact "unless clearly erroneous." Certainly this contemplates a broader scope of review than that limited to "objections in point of law." This is as it should be, for when a nonjury matter is referred to a master the court delegates a greater amount of its function than when the action is to be tried by a jury. In nonjury cases the master is asked to find facts which would otherwise have been found by the court. If the court accepts the master's findings, determining that they are not clearly erroneous, then they are final. But acceptance of a master's report in a jury case has no

such finality; for the issues are referred merely for purposes of clarification before presentation to the jury which remains the ultimate arbiter of the facts. If, after ruling on objections in point of law, the court accepts the master's report, it will be read and perhaps delivered to the jury and treated by them "as an item of evidence properly in the case entitled to such weight as the jury in its best judgment shall accord to it." Connecticut Importing Co. v. Frankfort Distilleries, 1940, D.Conn., 42 F.Supp. 225. Since the report of the master is merely *prima facie* evidence which the parties may attack at the trial with any competent evidence and which the jury is free to disregard, there is no danger that the master will displace the court in any role that is properly reserved to it. See 2B, Barron and Holtzoff (Wright ed., 1961), § 1162. Accordingly the scope of review by the court in jury actions should be narrower than in nonjury actions.

Rule 53(e) (4), Fed.R.Civ.P., states that "when the parties stipulate that a master's findings of fact shall be final, *only questions of law arising upon the report* shall thereafter be considered." (Emphasis added.) The language defining the scope of review under these circumstances is quite similar to the phrase "objections in point of law" that we are presently considering. This Circuit has recently interpreted Rule 53(e) (4) to foreclose review by the court except for abuse of discretion. United States f/u/b/o J. P. Smith v. Potomac Metal Products Inc., 1 Cir., Jan. 2, 1970, No. 7416. When there is such a stipulation the master does not infringe at all on the judicial function—the parties have agreed to a particular method of finding facts unrelated to court or jury. This justifies a very narrow scope of review.

---

1. There is some question as to the propriety and necessity of written objections to the master's report filed prior to the trial. See 2B, Barron and Holtzoff, Federal Practice and Procedure (Wright ed., 1961), § 1169, pp. 599–600; Daley v.

Evans Case Co., D.Mass., 1940, 1 F.R.D. 270. Since the objections were likely to be complicated, and in order to lessen confusion at the trial, the court ordered that they be filed prior to the trial on damages.

We do not conclude that because the language under Rule 53(e) (4) is so similar to that under Rule 53(e) (3) that the scope of review is equally circumscribed. The limits of the judicial power to rule on objections in point of law to a master's report filed in an action to be tried by a jury cannot be properly considered unless related to the use of the report at the trial and the degree to which it may consequently usurp the function of either the court or the jury. Since Rule 53(e) (3) and Rule 53(e) (4) deal with masters' reports of respectively differing effects, their similar language may take on somewhat dissimilar meanings. Of course both "questions of law arising upon the report" and "objections in point of law" contemplate rather narrow judicial review of the master's findings.

There is little difficulty concerning the court's power to sustain objections to any parts of the report that show an erroneous conception of relevant law. Certain questions are clearly not for the ultimate determination of either a master or a jury, e. g., the formulation and application of legal principles or the admission or exclusion of evidence. Since the master's report under Rule 53(e) (3) is to be treated as prima facie evidence, it cannot present indirectly to the jury what could not be presented directly. There are areas, however, where questions of law and questions of fact merge and there are also areas in which findings of fact involve questions of law because it is claimed that they are not supported by a legally sufficient quantum of evidence.

■ Many of the objections filed fall into this last category. The question in these situations is the amount of evidence necessary to sustain the master's finding. The court has found no precedent directly in point, but since the master's report is to be treated as prima

facie evidence, and therefore the jury would be entitled to accept it in its entirety, it is reasonable to demand of it the same sufficiency of evidence that would warrant a jury determination of the same facts. Accordingly, the court will apply the substantial evidence test that is applied in the First Circuit with respect to sufficiency of the evidence on motions for directed verdicts.[2] "This means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cross v. M. C. Carlisle & Co., 1 Cir., 1966, 368 F.2d 947, 953. If the facts found by the master could reasonably have been drawn from the evidence before him, then this court, even if it would have been otherwise persuaded by the same evidence, will not disturb the master's findings. Cf. Zenith Radio Corp. v. Hazeltine Research Inc., 1969, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129.

■ There is a further consideration which should be mentioned concerning the sufficiency of the evidence from which the master drew his conclusions. The liability trial had established the fact of damage to the plaintiff's business. The amount of those damages was the matter referred to the master. The evidentiary burden borne by the plaintiff in proving the actual amount of his damages in antitrust litigation is less than the burden of proof in other situations. Although a jury "may not render a verdict based on speculation or guesswork", Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652, "[p]recise computation of damages can rarely be derived from the complexities of antitrust litigation. This court has recognized that older standards requiring 'certainty' of damages have given way to 'proof of losses which border on the speculative, in order to implement the policy of the antitrust laws.'" Ford Motor Company

---

2. Because the master's report is not final the court believes that the lesser weight-of-the-evidence test contemplated in rulings upon motions for new trials under Rule 50(b), Fed.R.Civ.P., is inapplicable.

v. Webster's Auto Sales, Inc., 1 Cir., 1966, 361 F.2d 874, 887. See also Zenith Radio Corp. v. Hazeltine Research Inc., supra; Eastman Kodak Co. v. Southern Photo Material Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544. Therefore, if there was evidence presented to the master from which he might reasonably infer an amount of damage, then the jury will be permitted to hear his conclusions despite their uncertainty and despite the fact that the court might have preferred proof of a different nature or drawn different inferences from the evidence. In keeping with the fundamental function of the report as evidence, the jury will be able to hear through the master any reasonable theory of damage computation that they would be permitted to hear as evidence at a trial and upon which they would be entitled to render a verdict.[3]

---

3. The fuzzier the line between evidence reasonably tending to show the amount of damages and what is speculation and guesswork, the more difficult is the application of the principle. See generally, Timberlake, The Legal Injury Requirements and Proof of Damages in Treble Damage Actions under the Antitrust Laws, 1961, 30 Geo.Wash.L.Rev. 231; Guilfoil, Damage Determination in Private Antitrust Suits, 1967, 42 Notre Dame L.Rev. 647.