COMMONWEALTH OF PENNSYLVANIA and Raymond Williams et al., on their own behalf and on behalf of all others similarly situated

v.

LOCAL UNION 542, INTERNATIONAL UNION OF OPERATING ENGINEERS; Operating Engineers Joint Apprenticeship and Training Committee of Philadelphia, Eastern Pennsylvania and Delaware; General Building Contractors Association, Inc.; Contractors Association of Eastern Pennsylvania, United Contractors Association, and Pennsylvania Excavating Contractors Association, on their own behalf and on behalf of all others similarly situated; Glasgow, Inc., on its own behalf and on behalf of all others similarly situated.

No. 71–2698.

United States District Court,
E. D. Pennsylvania.

Aug. 8, 1979.

A. LEON HIGGINBOTHAM, Circuit Judge.*

#### CONTENTS

| | | PAGE |
|---|---|---|
| I. | Definitions | 7 |
| II. | Permanent Injunction | 8 |
| III. | United States Magistrate | 9 |
| IV. | Goals | 9 |
| V. | Union Obligations | 10 |
| VI. | Employer Obligations | 12 |
| VII. | Apprenticeship Program | 13 |
| VIII. | Master Mechanics | 14 |
| IX. | Retaining and Upgrading | 15 |
| X. | Record Keeping and Reporting | 15 |
| XI. | Allegations of Noncompliance with Goals | 15 |
| XII. | Statutory Requirements | 16 |
| XIII. | Notice | 16 |
| XIV. | Posting and Publicity | 16 |
| XV. | Attorneys' Fees and Costs | 16 |
| XVI. | Retention of Jurisdiction | 16 |

### I. DEFINITIONS

1. As used herein, unless the context clearly requires a different meaning, the

---

* United States Circuit Judge sitting by designation.

term "defendants" shall refer to the following:

(a) Local 542, International Union of Operating Engineers (Local 542);

(b) Operating Engineers Joint Apprenticeship and Training Committee of Philadelphia, Eastern Pennsylvania and Delaware (JATC);

(c) Contractors Association of Eastern Pennsylvania (CAEP), General Building Contractors Association, Inc. (GBCA), United Contractors Association (UCS), Pennsylvania Excavating Contractors Association (PECA), and all other employer associations who have been parties to a collective bargaining agreement with Local 542 at any time between November 8, 1965 and the date of this Decree; and,

(d) Glasgow, Inc., and all other employers who have been parties to a collective bargaining agreement with Local 542 and who hired at least one operating engineer affiliated with Local 542 at any time between November 8, 1965, and the date of this Decree.

2. As used herein, the term "collective bargaining agreement" shall mean the labor agreement currently in effect between Local 542 and participating contractors and contractors associations or, where the context so requires, a subsequent version of that agreement.

3. As used herein, the term "first year" shall mean the period beginning on the date of this Decree, and ending on March 31, 1980. Each subsequent year will begin on April 1 and end the following March 31st.

4. (a) As used herein, the term "minority" or "minorities" shall include blacks, Spanish–surnamed Americans, Asians, and American Indians.

(b) As used herein, the term "percentage of minorities in the community" or similar terms refer to the percentage of minority males between the ages of 18 and 65 in the population. The percentage of minorities in the community for each district is set forth in paragraph 16.

## II.  PERMANENT INJUNCTION

5. Defendants shall not discriminate against any minority person because of his color or national origin, with respect to acquisition, retention of membership or affiliation in said local union, with respect to referral and selection for employment, with respect to any training, retraining or upgrading programs, or with respect to any other terms and conditions of employment, union membership or affiliation.

6. No person shall be retaliated or discriminated against by any of the defendants, their agents, officers, employees or their successors in office, because that person has opposed any practice of defendants challenged in this lawsuit, because that person is a member of the class represented by plaintiffs or because that person has made a charge, testified, assisted or participated in any manner in any stage of the investigation, proceeding or hearing of this case.

7. Moreover, it shall be a violation of this Judgment and Decree for any defendant to deny, deprive, or attempt to deny or deprive, any individual member of the plaintiff class of a right or benefit to which he is entitled by the terms and provisions of the Judgment and Decree. It is the Court's specific purpose and intent in entering this order that all members of the plaintiff class shall share and participate equally, to the maximum extent possible, in the class–wide employment opportunities and rights created herein. It shall be a violation of the Decree, therefore, for any defendant to single out particular plaintiff class members for the purpose of denying them any relief herein to which they are entitled.

8. Further, a strike, work–stoppage or work slowdown by any officers, agents, members or affiliates of Local 542, or by any persons acting in concert with any offi-

cers, agents, members or affiliates of Local 542, which has as its purpose the interference with the operation of this Decree, shall constitute a violation of this Decree. Local 542 is obligated to make a good faith effort to prevent or end any such violations. Such a violation shall subject Local 542, its officers, agents, members and affiliates participating in the strike, work–stoppage or work slowdown to the contempt power of the Court. This clause shall operate regardless of whether the strike, work–stoppage or work slowdown is authorized by Local 542. However, nothing in this Decree shall prohibit a strike, work–stoppage or work slowdown by Local 542, its officers, agents, members or affiliates, the purpose of which is other than the interference with or the thwarting of the operation of this Decree.

## III. UNITED STATES MAGISTRATE

9. Pursuant to Local Rule 46 and 28 U.S.C. § 636, the Court shall designate a United States Magistrate for the Eastern District of Pennsylvania to have primary responsibility for overseeing the implementation of this Decree.

10. (a) Except for any matter expressly required by this Decree to be presented directly to the Court, any disputes among the parties regarding the interpretation or implementation of this Decree shall be presented in the first instance to the Magistrate. No party shall present any dispute to the Magistrate unless the party has first notified the other affected parties and made a good faith effort to resolve the matter by agreement. Unless the Decree or an order of this Court specifies a different period, any party may appeal any decision of the Magistrate under this Decree, including any decision made pursuant to this paragraph, by filing a request for review with this Court within ten (10) days of such decision. Delays beyond this ten day period shall be allowed upon a showing of good cause.

(b) In addition to the powers specified in this Judgment and Decree, the Magistrate shall be empowered to take all actions, including the establishment of such record–keeping requirements, as may be deemed necessary to implement and insure strict compliance with the terms and provisions of this Decree. The Magistrate shall hear and determine all complaints concerning the operation of this Judgment and Decree and shall decide any questions of interpretation, claims of violations, and questions of remedies that may be necessary and appropriate. The Magistrate shall act either on his own initiative or at the request of any interested person or party. All decisions of the Magistrate shall be either in writing or dictated to a court reporter who shall prepare a transcript of such decisions.

Nothing contained herein shall give the Magistrate the right to amend or modify the substantive terms and provisions of this Judgment and Decree, other than as specifically granted, nor shall the Magistrate have any power and authority other than that granted to him in this Judgment and Decree. Any request for modification of this Decree or any of its provisions, other than those modifications that the Magistrate is specifically empowered to make, shall be submitted directly to the Court. The Magistrate shall have the power to suggest modifications or amendments of this Judgment and Decree.

11. The Magistrate shall have the assistance of a six–member Advisory Committee, three members of which shall be selected by the Plaintiffs and three by the Defendants.

## IV. GOALS

12. It shall be the goal of this Decree that the number of hours worked by minorities equal the percentages of the total hours worked in each district and in each year as is set out below:

|  | 1st year | 2nd year | 3rd year | 4th year | 5th year |
|---|---|---|---|---|---|
| District 1 | 12% | 14% | 16% | 18% | 18% |
| District 2 | 1.1% | 1.3% | 1.3% | 1.3% | 1.3% |
| District 3 | .5% | .7% | .7% | .7% | .7% |
| District 4 | 2% | 2.6% | 2.8% | 2.8% | 2.8% |
| District 5 | 8% | 10% | 12% | 12.4% | 12.4% |

The Court may alter these goals on the basis of the 1980 United States Census or as provided in paragraphs 29 and 44. It shall also be the goal of this Decree to ensure in each year that in each category of union membership or affiliation (including group I, group I–A, group II, and group III membership in the parent body of Local 542, and membership in C Branch and in the Apprenticeship Program) in each district, except to the extent that differentials can be shown to be justified by nondiscriminatory factors, the average number of hours worked by minorities equals that worked by whites. To facilitate the Achievement of these results, the defendant employers and Local 542 shall have the specific obligations set forth in the succeeding paragraphs.

13. In calculating the number of hours worked by minorities, only the first 50 hours worked by any individual minority operating engineer in any week will be counted unless it is shown that any hours worked in excess of 50 *are not* the result of an attempt to distort the reporting statistics. Any of the first 50 hours may be discounted if it is shown that such hours are a result of an attempt to distort the reporting statistics.

V. UNION OBLIGATIONS

14. (a) Except as authorized by this Decree, Local 542 shall make all referrals in accordance with the procedures set forth in the collective bargaining agreement.

(b) In addition to the regular out-of-work lists contemplated by the collective bargaining agreement, Local 542 shall maintain out-of-work lists composed only of minority persons, divided into priority groups in accordance with the collective bargaining agreement.

(c) Local 542 is authorized to make referrals directly from the minority out-of-work lists in response to employer requests for minority employees made pursuant to paragraph 27 or at its own initiative pursuant to paragraph 15.

15. The percentage of minorities referred by Local 542 must at least equal those set forth in paragraph 12. If, at the end of the first year (as defined in paragraph 3), the goal for minorities' hours set forth in paragraph 12 has not been met in any district, the Magistrate may increase the minimum rate at which minorities must be referred.

16. Local 542 shall admit into its total membership and affiliation at least one minority for every one available non-minority admitted during the first two (2) years this decree is in effect. Thereafter, Local 542 shall admit at least one minority for every two non-minorities admitted. This ratio shall be followed until the racial composition of Local 542 and of its five districts reach the minority percentage in the community for each of the five districts and the union as a whole; provided, however, once a particular district attains its appropriate minority percentage (for example, 18% for District I) this one-for-one ratio shall no longer be applied in that district. Those percentage-goals are set forth below:

| District I | 18.0% |
|---|---|
| District II | 1.3% |
| District III | .7 |
| District IV | 2.8 |
| District V | 12.4 |

These goals may require reassessment after the release of the 1980 United States Census. Therefore, the Court may increase or decrease these percentage goals, as the case may be, either on its own motion or upon request by any party.

17. The procedures and criteria for each method of entry as a member of the parent body of Local 542 or as a registrant with Local 542 shall be set forth in a notice, which shall be posted in a conspicuous location in the hiring hall of each district of Local 542 and in the offices of each defendant employer. Local 542 shall also make the notice readily available to its members and affiliates and any interested members of the public. The parties shall attempt to agree on the contents of the notice; if they are unable to agree, the matter shall be presented to the Magistrate. Local 542 shall apply all procedures and criteria for each method of entry on a nondiscriminatory basis.

18. Defendant Local 542 shall admit at least one minority for every one non--minority through the following methods of entry:

New C Branch hires and new entrants to the Registrant Program. This ratio shall remain in effect until the racial composition of Local 542 and of its five districts reach the percentage--goals set forth in paragraph 16 and that percentage is maintained for 2 years; provided, however, once a particular district has attained its appropriate minority percentage and maintains it for two years, this one--for--one ratio shall no longer be applied in that district.

The mandatory one--for--one entry requirement shall not apply to Organization (the Union's organization of new employers) because of is unique characteristics. However, Local 542 shall make the maximum effort possible to meet the one--for--one entry requirement under Organization. The failure to meet the one--for--one requirement via Organization shall not relieve Local 542 of its overall obligation to admit one minority for every one non--minority until the percentage--goals set forth in paragraph 16 are met.

19. Any new methods of entry which Local 542 may develop and wish to utilize must first be submitted to Plaintiffs for their comment and thereafter to the Court for approval. The one--for--one entry requirement set forth in paragraph 16 may apply to any new method of entry if the Court deems its application to be appropriate.

20. In paragraph 27, the responsibilities of each defendant class employer with regard to the number of hours to be worked by minority operating engineers are detailed. Under the circumstances described there, each contractor--employer is permitted to hire minorities not currently affiliated with Local 542 in order to reach its minority utilization goal. Minorities hired and employed in compliance with paragraph 27 shall be required to become affiliated with Local 542. Minorities entering the operating engineers industry through this direct entry method shall be counted towards the attainment of the minority composition goals for the union as a whole and for each of its five districts as set forth in paragraph 16.

21. (a) Defendant Local 542 shall develop and present to the Court for approval valid, job-related criteria for admission to the union for each method of entry through which membership can be attained, including affiliation via the Registrant Program. Validation shall be, to the extent feasible, in accordance with the "Uniform Guidelines on Employee Selection Procedures" as promulgated by the Equal Employment Opportunity Commission on August 25, 1978, 43 Fed.Reg.No. 166, at 38290 et seq. The Plaintiffs shall have the opportunity to present their position on the legality and validity of any of these proposed criteria.

(b) If the Court approves the proposed union membership and registrant criteria, they may be put into effect; provided, however, that the approval of new membership and registrant criteria, if any, shall not relieve Local 542 of its obligations under paragraph 16 of this Decree.

22. Pending the development and approval of new membership requirements,

Local 542 may continue to use its existing requirements for each of its present methods of entry.

23. All minority graduates of Operations Benjamin Franklin I and II who are not members of Local 542 as of the date of this decree shall be offered Registrant books unless good cause is shown for the failure to do so and such minority graduates shall be offered admission into the parent body of Local 542 after they have worked 1500 hours during their affiliation with Local 542. They may be charged an initiation fee only if they have not previously made such a payment. However, if a fee is required, deferred payments shall be permitted in an amount to be determined by the Magistrate.

24. All minority graduates of Operations Benjamin Franklin I and II who are not members of Local 542 as of the date of this decree shall be offered the opportunity for intensive training and retraining as operating engineers. Minority graduates of these programs who have attained union membership may take part in this training if they choose to do so. The training itself may take the form of comprehensive on - the-job training or participation in the Special Training Program set forth in paragraph 41 of this Decree, or both. All aspects and components of training shall be developed by the Magistrate with the assistance of the Advisory Committee. The costs of this program shall be borne by the Defendants.

25. Not all minority graduates of Operations Benjamin Franklin I and II who have not yet attained union membership are required to undergo the training identified in paragraph 24. Minorities in this group who are sufficiently skilled as operating engineers need not participate in training. The decision as to whether a particular graduate is sufficiently skilled is reserved to the Magistrate with the assistance of the Advisory Committee.

26. In order to remedy the past racial discrimination with respect to transfers in and out of C Branch, Local 542 shall personally notify all present and future C Branch minority members of their right to apply for and be transferred out of the C Branch and into the parent body of the Union. No more stringent requirements for transfer shall be imposed on present C Branch minorities than have been imposed by Local 542 in the past on whites.

In addition, Local 542 shall personally notify all present parent body minorities of their right to apply for transfer into the C Branch. No more stringent requirements for transfer in this regard shall be imposed on these minorities than have been imposed by Local 542 in the past on whites.

VI.  EMPLOYER OBLIGATIONS

27. In order to achieve the minority utilization goals set forth in paragraph 12, each defendant contractor–employer shall hire minority operating engineers in the following manner.

(a) First, each contractor-employer shall hire and employ minority operating engineers who are or become members, apprentices, registrants or affiliates of Local 542 and who are referred by Local 542 through the hiring hall. If the contractor–employer has not met its minority utilization goals, it may request additional minority referrals.

(b) Second, each contractor–employer must thereafter, if it has not yet reached its minority utilization goal, and if it cannot obtain sufficient minority referrals from Local 542, hire and employ minority operating engineers who are not affiliated with defendant Local 542. Registrant books shall promptly be provided to these minorities by the Union. Thereafter, each such minority shall become eligible for parent body membership in accordance with the relevant terms of the collective bargaining agreement and the Union's by–laws. The wages, compensation and all terms and conditions of employment for this group of minorities are to be determined by the relevant collective bargaining agreement.

(c) Third, each contractor–employer must then, if it has not yet reached its minority utilization goal, hire and employ minorities not currently skilled and not currently affil-

iated with defendant Local 542. On-the-job training and instruction shall be provided to this category of minorities so that they are able, to the maximum extent feasible, to learn and become skilled in the operation of equipment used and the work performed by operating engineers. The Union shall promptly provide each minority person hired pursuant to this provision with a Registrant book. Thereafter, each such minority shall become eligible for parent body membership in accordance with the relevant terms of the collective bargaining agreement and the Union's by-laws. The wages, compensation and all terms and conditions of employment for this group of minorities shall be determined by the relevant collective bargaining agreement.

28. In meeting its responsibilities, as set forth in paragraph 27, no contractor-employer shall be required to hire, or continue the employment of, any minority if just cause exists not to hire, train or employ him. The phrase "just cause" as used herein shall be given the same meaning and interpretation as it is given in the collective bargaining agreement (see, *e. g.*, P–281–B. at 2. Article II, Section 2(c).) In addition, no contractor-employer shall be held liable for the non-attainment of its minority utilization goal because of a voluntary termination by a minority operating engineer that is without just cause, or because of the unavailability of a minority operating engineer due to illness, incarceration or the like. Furthermore, the refusal of a referral without just cause by a minority operating engineer on three consecutive occasions shall be a defense assertable by a contractor-employer to the non-attainment of its minority utilization goals.

29. The minority utilization goals set forth in paragraph 12 and the means for achieving them as set forth in paragraph 27 shall apply to each non–C Branch contractor-employer in each of Local 542's five districts. The Magistrate shall audit each employer's minority utilization of operating engineers on a quarterly basis.

The burden of proving a valid reason for not achieving the appropriate minority utilization percentage rests on each non-complying contractor-employer. In order to successfully discharge its burden, each non-complying contractor-employer, if any, must prove that it utilized or attempted to utilize the means for achieving the appropriate minority utilization goal as set forth in paragraph 27. The Magistrate shall determine whether a non-complying contractor-employer has discharged its burden and what remedial action, if any, should be imposed in accordance with the procedures set forth in paragraph 44.

30. (a) Hiring for C Branch shall continue to be conducted directly by the defendant employers.

(b) Each C Branch employer shall have the responsibility of guaranteeing that all of its new C Branch employees are hired on a one minority for one non-minority basis until the percentage of minorities in its operating engineer labor force is at least equal to the percentage of minorities in the District(s) of Local 542 in which it is located as set forth in paragraph 16.

(c) Except where justified by nondiscriminatory factors, each employer in each district shall employ minority and white C Branch employees for the same average number of hours per employee.

(d) Any allegations of noncompliance with the provisions of this paragraph shall be resolved according to the procedures set forth in paragraph 44.

## VII. APPRENTICESHIP PROGRAM

31. Defendant employers and Local 542 shall continue to administer an apprenticeship program through the JATC.

32. Defendant JATC shall admit into its apprenticeship program at least one minority for every one non-minority apprentice in each new apprenticeship class. This ratio shall be followed until the racial composition of Local 542 as a whole and of its five districts reach the minority percentage goals set forth in paragraph 16; provided, however, once a particular district attains its appropriate minority percentage, this one-for-one ratio shall no longer be applied

in that district. The terms and provisions of this paragraph shall apply to any apprenticeship class beginning after the date of this decree.

33. JATC may continue to utilize the present JATC test and oral interview, and thereafter rank eligible applicants in order of their scores on that test and interview. Should JATC desire to adopt and uitilize other or additional criteria and standards, it must submit these criteria and standards to plaintiffs for comment and subsequently to the Court for approval; provided, however, that no JATC class shall be cancelled or postponed pending the adoption and/or implementation of any additional criteria or standards; and provided further, that regardless of which standards and criteria are utilized, the one–for–one admission requirement, as set forth in paragraph 32, shall remain in effect until such time as the percentage goals set forth in paragraph 16 are met.

34. In order to meet the one–for–one ratio set forth in paragraph 32 and the percentage–goals set forth in paragraph 16, JATC shall affirmatively recruit minority applicants for the apprenticeship program in each of Local 542's five districts and JATC shall continue to use the recruitment, tutoring and counselling services of the Joint Apprenticeship Outreach Program and any other agency that is capable of assisting JATC in minority recruitment.

35. Any minority member of the apprenticeship program whose progress is unsatisfactory shall be notified by the JATC in writing of the problem and the reasons therefor. If he does not show adequate improvement within thirty (30) days after the initial notice of deficiency, he shall be notified in writing to appear before the JATC and shall be offered the opportunity to participate in a special remedial program. If adequate improvement does not occur within sixty (60) days after his requested appearance before the JATC, he may be discharged from the apprenticeship program. Any person discharged from the apprenticeship program pursuant to this paragraph may appeal his discharge to the Magistrate within seven (7) days after he receives written notice of his discharge and his right to appeal.

36. Upon graduation from the apprenticeship program, an apprentice shall be accorded Group I journeyman status in Local 542 as provided by the collective bargaining agreement.

37. Prior to selecting the members of each apprentice class, the JATC shall take reasonable steps to publicize the class, including advertisements in the help–wanted sections of newspapers or periodicals oriented toward the minority community.

38. In order to remedy the past racial discrimination with respect to the position of JATC instructor, defendant JATC shall appoint one minority for each one non–minority to all future JATC instructor positions, and shall continue to apply that ratio until such time as 11.5 percent (the percentage of minorities in community in Local 542's jurisdiction) of all JATC instructor positions are held by minorities. The qualifications for JATC instructor shall in no respect be any more stringent than those previously applied by the JATC.

VIII. MASTER MECHANICS

39. In District I of Local 542, at least one out of every eight new master and assistant master mechanic appointments shall be to minority parent body members.

In Districts II, III, IV and V, minority parent body members shall be appointed to master and assistant master mechanic positions in a percentage equivalent to the minority representation in the community for those districts (i. e., 1.3% in District II; .7% in District III, 2.8% in District IV, and 12.4% in District V).

The requirements for the hiring of master and assistant mechanics shall be reassessed after two years.

40. The Defendants shall develop, adopt and implement non–discriminatory and job–related standards for the positions of master and assistant master mechanics. Once developed, these standards shall be submitted to the Court for approval, with

prior submission to Plaintiffs for their comments, or objections, if any.

## IX.  RETRAINING AND UPGRADING

41.  In light of the Court's findings of intentional discrimination against minority operating engineers with respect to referrals, hours worked, wages, and with respect to the exclusion of minorities from Operation Stepping Stone, the Defendants shall conduct a retraining and upgrading program, the purpose of which is to improve the skills, where necessary, of minority members and registrants of Local 542.  All active minority members and registrants shall be personally notified of the program and personally offered an opportunity to participate.  The program shall be developed by the Magistrate with the assistance of the Advisory Committee.

42.  This training program shall not, however, be limited to training at a training site, but shall also include on–the–job training on new equipment or equipment currently in use in the operating engineers industry.  The expenses of the program shall be borne by the Defendants.

## X.  RECORDKEEPING AND REPORTING

43.  (a) During the life of this Decree each defendant shall maintain sufficient records to enable it to comply with the reporting requirements of this paragraph and to allow the Magistrate or the Court to determine the adequacy of its compliance with this Decree.

(b) To facilitate the compilation of data and the filing of reports, the defendants shall establish and maintain a Reporting Committee, which shall consist of one person designated by Local 542 and one person designated by the defendant employers.

(c) Each defendant employer shall submit to the Magistrate, the Reporting Committee, and a representative designated by plaintiffs a quarterly report setting forth sufficient information regarding operating engineer hours for the previous quarter and the year–to–date to permit a determination of whether the employer is in compliance with its obligations under paragraphs 27 and 30.

(d) Based on the reports submitted by employers pursuant to subparagraph (c), the Reporting Committee shall submit to the Magistrate, Local 542, and a representative designated by plaintiffs a quarterly report setting forth sufficient information regarding operating engineer hours for the previous quarter and the year–to–date to permit a determination of whether the overall hours goals set forth in paragraph 12 are being met.

(e) Local 542 shall submit to the Magistrate, the Reporting Committee, and a representative designated by plaintiffs a quarterly report setting forth sufficient information regarding union membership and additions thereto for the previous quarter and the year‑to‑date to permit a determination of whether Local 542 is in compliance with its obligations under paragraphs 14–26.

(f) The JATC shall submit to the Magistrate, the Reporting Committee, and a representative designated by plaintiffs a quarterly report setting forth sufficient information regarding the membership and operation of the apprentice program for the previous quarter and the year–to–date to permit a determination of whether the JATC is in compliance with its obligations under paragraphs 31–38.

(g) The parties shall attempt to agree on the form and the schedule for submission of the reports required by subparagraphs (c)–(f).  Any matters as to which the parties cannot agree shall be submitted to the Magistrate.

## XI.  ALLEGATIONS OF NONCOMPLIANCE WITH GOALS

44.  (a) In the event that at the end of any year, the reports filed pursuant to paragraph 43 indicate that any of the goals set forth in this Decree have not been met for that year, the parties shall meet and attempt to agree on the corrective action, if any, that should be undertaken.  Any corrective action agreed upon by the parties

shall be submitted to the Magistrate and shall be deemed to be approved unless the Magistrate rejects the parties' proposal within twenty–one (21) days of its submission.

(b) In the event that the parties are unable to agree, the plaintiffs shall so inform the Magistrate. After reviewing the positions of all parties and considering the burdens of proof imposed in paragraph 29, the Magistrate shall issue a ruling regarding the corrective action, if any, to be undertaken. Such corrective action, if ordered, may include an increase in the minority entry ratios into the parent body, C Branch, or the apprentice program; an increase in the rate of minority referrals as provided for in paragraph 16; or any other corrective action deemed appropriate. If necessary in the Magistrate's judgment to prevent future disparities, the Magistrate may also increase the minimum hours goals imposed under paragraph 12.

(c) The Magistrate may take corrective action on the basis of the quarterly reports upon notice to and consultation with the parties.

## XII. STATUTORY REQUIREMENTS

45. This Court has determined that all of the obligations imposed upon defendants by this Decree are required for compliance with 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, that none will result in discrimination under those statutes, and that each is ordered pursuant to this court's equitable powers under these statutes.

## XIII. NOTICE

46. Each member of the plaintiff and the defendant classes shall be sent, by certified mail, return receipt requested, a copy of this Judgment and Decree. This mailing shall also include a notice summarizing this Decree as well as this court's opinion liability which was filed and impounded on November 30, 1978 and released from impoundment on January 2, 1979. Counsel shall agree on the wording of this notice within 30 days from the date of this decree.

In the event the parties are unable to agree within the 30-day period, any unresolved matters shall be submitted to the Magistrate. The costs of notification shall be borne by the defendants.

## XIV. POSTING AND PUBLICITY

47. Defendants shall post conspicuously copies of this Judgment and Decree and the Notice agreed to under Paragraph 46 in a place and manner designed to ensure that those affected by it have the maximum opportunity to familiarize themselves with its contents. In addition, the parties shall agree on a program to publicize the opportunities afforded by the terms of this Decree, and the procedures available for taking advantage of such opportunities. The text of all materials used for this publicity shall be furnished in advance to the plaintiffs and the Magistrate. If the parties cannot reach agreement with respect to the publicity program, the matter shall be submitted to the Magistrate.

## XV. ATTORNEYS' FEES AND COSTS

48. Individual and class plaintiffs and plaintiff Commonwealth of Pennsylvania, as prevailing parties, are entitled to a reasonable award of attorneys' fees and costs. Plaintiffs' counsel are therefore directed to submit to the defendants and file with the Court an appropriate motion in this regard within forty five (45) days of the date of this Judgment and Decree.

## XVI. RETENTION OF JURISDICTION

49. This Decree and all its provisions except for paragraphs 5 8 shall terminate on March 31, 1984 unless, prior to that date, good cause is shown for an extension of any provisions of the Decree or for their earlier termination.

50. This Court shall retain continuing jurisdiction over this action to ensure compliance with the terms and provisions of this Judgment and Decree. That jurisdiction shall terminate, either upon this Court's own motion, or upon motion of any party, at such time as the Court concludes

that the rights of plaintiffs have been accorded and satisfied by the defendants.

Decree supplemented, 488 F.Supp. 988.