**Willie Lee JACKSON, et al.**

v.

**LOCAL UNION 542, INTERNATIONAL UNION OF OPERATING ENGINEERS.**

**No. CIV. A. 00–854.**

United States District Court,
E.D. Pennsylvania.

May 16, 2001.

Joanne W. Rathgeber, Rathgeber & Alberts, Doylestown, Linda P. Falcao, Law Offices of Linda P. Falcao, P.C., Wynnewood, PA, for Willie Lee Jackson, Terry Styer, Gerald Phillip Howard, Plaintiffs.

Samuel L. Spear, Spear, Wilderman, Borish, Endy, Spear and Runckel, Philadelphia, PA, for Local Union 542, International Union—Operating Engineers, Defendants.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is plaintiffs Willie Lee Jackson, *et al.*'s ("Plaintiffs") Motion for Clarification of the Special Master's Appointment and/or for Removal of the Case from the Special Master and defendant Local Union 542, International Union of Operating Engineers' ("Local 542") Opposition thereto.[1]  For the reasons set forth below, the motion will be granted in part and denied in part.

### I.  BACKGROUND

Plaintiffs, former employees of a landfill operation known as Waste Management of Pennsylvania, Inc., Geological Reclamation Operations and Waste Systems, Inc. ("GROWS"), filed the instant action on February 16, 2000 against defendant Local 542, seeking, *inter alia,* compensatory and punitive damages based upon claims of racial discrimination in violation of 42 U.S.C. §§ 1981 and 2000e *et seq.* ("Title VII"), as well as a jury trial.[2]  *See* 42 U.S.C. § 1981 (providing damages remedy for victims of racial discrimination in employment); *Id.* § 1981a (providing right to seek compensatory and punitive damages for certain violations of Title VII, as well as jury trial where such damages are sought).

The instant motion concerns the applicability of a Judgment and Decree entered in *Commonwealth of Pennsylvania v. Local 542, International Union of Operating Engineers,* 488 F.Supp. 988 (E.D.Pa. 1979) (hereinafter "*Pennsylvania v. Local 542* "), a case with which this court has been familiar for over twenty years.  In 1971, the Commonwealth of Pennsylvania and 12 African–American males challenged an alleged pattern and practice of racial discrimination against minorities, as a class,

---

1.  Plaintiffs' case was assigned to the Honorable Edmund V. Ludwig and then transferred to this court.

2.  Plaintiffs also assert claims under 42 U.S.C. § 1985, 29 U.S.C. § 185 and Pennsylvania statutory and common law.  The court has federal question and supplemental jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 & 1367.

Plaintiffs exhausted their administrative remedies before the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  Plaintiffs commenced suit shortly after the EEOC issued a Right–to–Sue letter on February 8, 2000.  PHRC closed its file on February 29, 2000, permitting Plaintiff to file suit.  *See* 43 Pa. Cons.Stat. Ann. § 962(c) (granting complainant right to file suit within two years of closing of PHRC file).

Because Plaintiffs' motion appears to be limited to the § 1981 and Title VII claims, the court need not address Plaintiffs' other claims.

by Local 542 and others. Or January 2, 1979, the court issued its decision that minorities, as a class, had been victims of intentional racial discrimination by Local 542 in violation of Title VII and 42 U.S.C. § 1981. *Pennsylvania v. Local 542*, 469 F.Supp. 329 (E.D.Pa.1978) (liability opinion), *aff'd in relevant part*, 648 F.2d 922 (3d Cir.1981).[3] On November 7, 1979, the court issued an injunction, called a "Judgment and Decree," that prohibited any further discrimination by Local 542. *Pennsylvania v. Local 542*, 502 F.Supp. 7 (E.D.Pa.1979).[4] Following the entry of the 1979 injunction and as part of the individual relief phase of the litigation, Stage II, this court entered the Stage II Consent Decree (the "Decree") in 1982. *See Pennsylvania v. Local 542*, Civ. No. 71–2698, 1982 WL 770, at *1 (E.D.Pa. Dec.15, 1982) (approving joint proposed consent decree governing Stage II damage awards). The court subsequently revised the Decree in 1983 and 1987. The purpose of the Decree is to adjudicate claims of and provide remedies for past, present and future racial discrimination by Local 542.

On May 12, 1987, pursuant to Federal Rule of Civil Procedure 53 and ¶ 9 of the Decree, the court appointed Mark S. Halpern, Esquire to serve as Special Master with all the powers provided for in the Decree. The court has administered the Decree through his auspices ever since. Mr. Halpern has spent thousands of hours fulfilling his responsibilities, all of which have been closely monitored by the court and the parties as envisioned by Rule 53 and the Decree.

At the time of the entry of the Decree, as well as the subsequent amendments thereto, Title VII of the Civil Rights Act, the statute upon which Plaintiffs' base some of their claims, authorized only equitable relief for violations of its provisions. Accordingly, plaintiffs asserting Title VII claims had no right to a jury trial. However, Congress amended Title VII in 1991, granting plaintiffs who are discriminated against in violation of Title VII a right to seek compensatory and punitive damages and an attendant right to a jury trial if such damages are sought. 42 U.S.C. § 1981a.

After determining that Plaintiffs' Second Amended Complaint described claims of racial discrimination allegedly committed by Local 542, the court referred the matter to the Special Master on September 28, 2000. Mr. Halpern conducted an investigation, questioned persons with knowledge and examined numerous documents. As of this writing, he has completed or nearly completed all of the work necessary to render a Report and Recommendation to the court as required by the Decree.

## II. DISCUSSION

The instant motion questions the Special Master's authority and presence as it relates to certain of Plaintiffs' claims, and seeks his removal or, alternatively, a clarification of his role. First, Plaintiffs assert that the Special Master is biased and should be removed because he has an ongoing financial relationship with Local 542,

3. The case was originally assigned to United States District Judge Leon A. Higgenbotham until December 1979, when it was transferred to the undersigned by reason of Judge Higgenbotham's elevation to the United States Court of Appeals for the Third Circuit. Although filed on November 30, 1978, Judge Higgenbotham's liability opinion at 469

F.Supp. 329 was impounded until January 2, 1979.

4. The Judgment and Decree was filed on August 8, 1979, but was impounded until November 7, 1979. *See Pennsylvania v. Local 542*, 488 F.Supp. 988 (E.D.Pa.1979) (describing impoundment process as well as purpose and basis of 1979 Decree).

and although he has heard many racial discrimination claims, he has never made a finding of racial discrimination against Local 542. Second, Plaintiffs assert that requiring them to present their case in any form before the Special Master is an unnecessary and prejudicial burden on Plaintiffs' right to have their claims under § 1981 and Title VII decided by a jury. Third, Plaintiffs assert that if they are required initially to proceed before the Special Master, the court should issue an order that they are not prevented from proceeding with a jury trial of these claims after the Special Master has rendered his Report and Recommendation, and that they are not restricted to presenting only the evidence presented to the Special Master. The court will address each of the three bases for Plaintiffs' motion *seriatum.*

### A. *Bias*

█ Plaintiffs's motion presents no basis for the removal of the Special Master. First, Plaintiffs do not cite any statute, opinion, professional standard or other legal ground upon which they seek his removal.[5] Second, any assertion that the Special Master is biased because he has a "longstanding and ongoing relationship with Defendant" is wholly unsupportable and frivolous. Plaintiffs state no facts to support their assertion, leading the court to conclude that they are referring to Local 542's ongoing obligation to pay his costs. The court unilaterally imposed that obligation on Local 542 under Federal Rule of Civil Procedure 53(a). Further, the court has previously turned down Local 542's request, renewed again in its response to this motion, that those costs be borne equally between Plaintiffs and Local 542.[6] Thus, Local 542's court imposed obligation to pay the Special Master's costs is not a basis for removal.

Plaintiffs apparently perceive that the fact that the Special Master has never ruled against Local 542 is somehow evidence of sufficient bias to preclude him from continuing to aid the court in adjudicating Plaintiffs' claims. Plaintiffs do not offer any other evidence of this alleged bias or point to any other facts that might conceivably support an inference of bias.

Plaintiffs' conclusory claims of bias and request for removal demonstrate a funda-

**5.** The courts are split as to whether 28 U.S.C. §§ 144 & 455, which set forth standards for removal of judges, apply to Special Masters and similar court appointees. *Compare Rios v. Enterprise Ass'n Steamfitters Local 638,* 860 F.2d 1168, 1174 (2d Cir.1988) (concluding that § 455 not applicable to special masters); *Morgan v. Kerrigan,* 530 F.2d 401, 426–427 (1st Cir.1976) (concluding that masters are not held to strict standards of impartiality that apply to judges); *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.,* Civ. No. 87–44, 1990 WL 303427, at \*4 n. 1 (D.Vi.1990); (noting that §§ 144 & 455 not applicable to special masters); *with United States v. Werner,* 916 F.2d 175, 178 (4th Cir.1990) (applying § 455 to land commissioner appointed under Fed.R.Civ.P. 71A(h)); *Jenkins v. Sterlacci,* 849 F.2d 627, 630–32 (D.C.Cir.1988) (holding that special masters are subject to same disqualification standards as judges including, *inter alia,* § 455).

Even if these statutes apply, they provide no support for Plaintiffs' position. Section 144 provides for re-assignment of a proceeding in which a party files an affidavit stating the facts and reasons for the belief that the judge is biased and that it is made in good faith. Plaintiffs have filed no such affidavit. Section 455 mandates that a judge disqualify himself in any proceeding in which, *inter alia,* his impartiality may be questioned or he has a personal bias concerning a party. For the reasons discussed in the text, there is no evidence upon which to question the Special Master's impartiality and no evidence supporting a reasonable inference of bias.

**6.** Because Local 542 has not demonstrated any factual or legal change in circumstances, the court will not revisit the issue here.

mental misunderstanding of the Special Master's role in the administration of a longstanding and complex Decree. Plaintiffs fail to afford recognition to the Special Master's efforts and successes over many years in resolving and settling real, as well as perceived, differences between the various adversaries who have presented matters for resolution. A review of the records in *Pennsylvania v. Local 542* since 1987 clearly demonstrates the Special Master's fair, full and dedicated performance of his role. Plaintiffs should not forget that in the hundreds of hours Mr. Halpern dedicated to this matter in his role of Special Master, he has resolved virtually all disputes to the parties' satisfaction, making resort to the court unnecessary. Each party that has been subjected to the Special Master's service had full rights under the law to appeal to this court all rulings and decisions that such a party believed adversely affected his position. Because the premise for seeking removal is presumably a product of a lack of understanding of the process required by the Decree, it is best characterized as baseless. Accordingly, the request for removal will be denied.

### B. *Plaintiffs' Right to a Jury Trial and the Special Master Process*

As an initial matter, Paragraph II(2) of the Stage II Consent Decree provides in relevant part that:

> This Decree settles in full all class-claims for monetary relief of whatever kind for members of the plaintiff class against Local 542 ... which have been, are, or could have been raised in this litigation. **This Decree is not intended, however, to affect, limit or in any way resolve any pending or future grievance that has been or may be filed with the Master under the injunctive judgment and decree issued by the Court on November 7, 1979. In addi-**

**tion, this Decree is not intended to affect, limit or in any way resolve any pending or future claim or charge of racial discrimination against Local 542 ... that could not have been raised in this litigation.**

Thus, the plain language of the Decree was not intended to limit claims for monetary damages arising after its entry and based on charges of racially discriminatory conduct. These plaintiffs were not included among those who had their damage claims resolved through the Decree and accordingly are not, and cannot be, barred from bringing their present claims. *See, e.g., Harris v. Pernsley,* 755 F.2d 338, 342–43 (3d Cir.1985) (holding that where no member of present plaintiff class had cause of action at time prior judgment was entered, claim cannot be barred by *res judicata*); *Black Grievance Comm. v. Philadelphia Elec. Co.,* 79 F.R.D. 98, 105–06 (E.D.Pa. 1978) (holding that consent decree could not preclude plaintiffs from bringing claims that could not have been brought at time consent decree was filed and to which they were legally and procedurally entitled).

The court notes that Local 542 does not appear to dispute Plaintiffs' rights to pursue their claims for damages under § 1981 or Title VII, or to present their claims to a jury. Rather, Local 542 takes issue, justifiably so as discussed *infra,* with Plaintiffs' assertion that the instant case should not be presented to the Special Master at all despite that fact that Plaintiffs' claims fall within the ambit of the Decree and its provisions for review.

Even if Local 542 did dispute Plaintiffs' assertion that they have a statutory right to present these claims to a jury, rather than have them adjudicated solely by the court upon a report and recommendation from the Special Master and any objec-

tions thereto, the court doubts that Local 542 could support such an argument. To the extent that Plaintiffs' claims under § 1981 are legal, rather than equitable, in nature, Plaintiffs have a right to present those claims to a jury. *See Harris v. Richards Mfg. Co., Inc.,* 675 F.2d 811, 814 (1982) (stating that parties are entitled to jury trial to extent that plaintiff seeks legal relief under § 1981); *Williams v. Owens–Ill., Inc.,* 665 F.2d 918, 928 (9th Cir.1982) (stating that accompanying legal remedies under § 1981 is right to jury trial) (citations omitted); *Bibbs v. Jim Lynch Cadillac, Inc.,* 653 F.2d 316, 318 (8th Cir.1981) (recognizing appropriateness of submitting all legal claims under § 1981 to jury and citing caselaw in accord).

Further, the Supreme Court has made clear that 42 U.S.C. § 1981a, enacted by Congress in 1991, can be seen as creating a new cause of action that attaches an important new legal burden to engaging in discriminatory conduct in violation of Title VII, and that " 'if a complaining party seeks compensatory or punitive damages,' the jury trial option must stand or fall with the attached damages provisions." *Landgraf v. U.S.I. Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994); *see, e.g., Elbaz v. Congregation Beth Judea, Inc.,* 812 F.Supp. 802, 808 (N.D.Ill.1992) (holding that plaintiff who sued for damages under Title VII after effective date of 1991 amendment was entitled to jury trial). Thus, the Decree, entered before the events giving rise to Plaintiffs' civil rights claims, cannot be read to override Plaintiffs' subsequently created statutory right under § 1981a to a jury trial for their claim for damages under Title VII.[7]

Therefore, the issue before the court is not whether Plaintiffs have a right to pursue their cause of action for damages and their attendant right to a jury trial, but whether that right can bypass the established procedure currently in place for this court's review of alleged racially discriminatory conduct by Local 542.

Plaintiffs clearly fit the definition of members of the class certified in *Pennsylvania v. Local 542,* and the Decree contemplates the continued involvement of the Special Master in post-Decree discrimination claims such as theirs. Although the Decree has never been construed or understood to bar future discrimination claims, it has likewise never been construed or understood to foreclose the continued functioning of the Special Master in the adjudication of such claims.

Further, the Special Master's role under the Decree does not conflict in any way with Plaintiffs' right to a jury trial. Indeed, the Federal Rule of Civil Procedure 53(e)(3) accommodates the role of the Special Master with claims a that party is entitled to present to a jury by providing that:

> In an action to be tried by a jury the Master shall not be directed to report the evidence. The Master's findings upon the issues submitted to the Master are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objection in point of law which may be made to the report.

Thus, in the instant case, the Special Master's findings are simply admissible evidence to be considered by the jury, with the jury remaining the ultimate arbiter of fact. *See, e.g., L.K. Comstock & Co., Inc.*

---

**7.** It should be noted that § 1981a(a)(1) prevents double recovery of damages by plaintiffs bringing claims under Title VII and § 1981.

*v. Becon Const. Co., Inc.,* 932 F.Supp. 906, 909–910 (E.D.Ky.1993) (noting that either party may present evidence contradicting report and that jury need not accept master's findings); *Music Suppliers, Inc. v. London Records, Inc.,* Civ. No. 79–2566–G, 1988 WL 34277, at *4 (D.Mass. Feb.22, 1988) (noting that jury remains ultimate arbiter of facts, and that report is merely prima facie evidence that parties may attack at trial and jury may disregard) (citing *Eastern Fireproofing Co., Inc. v. United States Gypsum Co.,* 50 F.R.D. 140, 142 (D.Mass.1970)).

Because the functions of the Special Master in the instant matter are clear, have had historic court-approved application, do not conflict with any of the laws that could apply to the Plaintiffs' § 1981 and Title VII claims and are sanctioned by the Federal Rules of Civil Procedure, submission of those claims to the Special Master is not a prejudicial burden on Plaintiffs' rights to a jury trial. Accordingly, the motion for clarification will be granted to the extent that Plaintiffs request clarification that they are not precluded from presenting their § 1981 and Title VII claims to a jury, and denied to the extent that Plaintiffs seek to avoid the Special Master process provided by the Decree.

Finally, Plaintiffs prematurely request a ruling that they may present evidence to the jury that has not been presented to the Special Master. As discussed above, Plaintiffs are free to present evidence contradictory to the Special Master's report. However, Plaintiffs' evidence may be inadmissible for other reasons. The court has not been briefed on the nature of the evidence on the reasons that it was not submitted to the Special Master. Accordingly, the court will deny Plaintiffs' premature request for a conclusive evidentiary ruling.

### III. CONCLUSION

For the reasons discussed above, the Motion for clarification and/or removal of the case from the Special Master will be granted in part and denied in part. The motion will be granted to the extent that Plaintiffs seek a ruling that they are not precluded from presenting their § 1981 and Title VII claims for damages to a jury. The motion will be denied in all other respects.

### ORDER

AND NOW, TO WIT, this 16th day of May, 2001, upon consideration of plaintiffs Willie Lee Jackson, *et al.*'s ("Plaintiffs") Motion for Clarification of the Special Master's Appointment and/or for Removal of the Case from the Special Master and defendant Local Union 542, International Union of Operating Engineers' ("Local 542") Opposition thereto, IT IS ORDERED that:

1. Plaintiffs' claims of racial discrimination, brought pursuant to 42 U.S.C. § 1981 and Title VII, must proceed through the Special Master process provided for in the Stage II Consent Decree in *Commonwealth of Pennsylvania v. Local 542, International Union of Operating Engineers,* 488 F.Supp. 988 (E.D.Pa. 1979).

2. Plaintiffs are entitled to a jury trial on such claims; and

3. Plaintiffs' motion is DENIED in all other respects.